UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | NO. 24-114 |
| JOVANTE MATTHEWS | SECTION "R" |

## ORDER AND REASONS

Defendant Jovante Matthews moves to dismiss count three of the indictment on the grounds that 18 U.S.C. § 922(g)(1), which prohibits possession of a firearm by a convicted felon, is unconstitutional.[1] The government opposes this motion.[2] For the following reasons, the Court denies the motion.

### I.   BACKGROUND

Count three of the indictment charged Matthews with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).[3] The indictment

---

[1]   R. Doc. 31.
[2]   R. Doc. 36.
[3]   *Id.* at 2.

1

identifies Matthews's nine prior felonies, including a conviction of three counts of simple robbery in violation of La. R.S. § 14:65.[4]

Matthews moves to dismiss count three on the grounds that Section 922(g)(1) is unconstitutional as applied to him under the Second Amendment, that it is unconstitutionally vague in violation of his Fifth Amendment Due Process rights, and that it unconstitutionally exceeds Congress's power to regulate under the Commerce Clause.[5] The government opposes the motion, arguing that U.S. Supreme Court and Fifth Circuit precedent preclude defendant's argument.[6] The Court considers the motion below.

## II.    LEGAL STANDARD

Federal Rule of Criminal Procedure 12(b)(1) provides that a "party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." A court can grant such a motion without a trial when a question of law is involved. *United States v. Fontenot*,

---

[4]    *Id.* Matthews has also been convicted of two counts of attempted possession of a firearm by a felon, obstruction of justice, possession of a firearm by a felon, and two counts of possession of a firearm. *Id.*
[5]    R. Doc. 31-1 at 1.
[6]    R. Doc. 36.

665 F.3d 640, 644 (5th Cir. 2011). Applicable defenses include "a defect in the indictment or information," as alleged here. Fed. R. Crim. P. 12(b)(3)(B).

## III. DISCUSSION

### A. Unconstitutional As Applied

Defendant first asserts that Section 922(g)(1) is unconstitutional as applied to him under the U.S. Supreme Court's Second Amendment decisions in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022), and *United States v. Rahimi*, 144 S. Ct. 1889 (2024), and the Fifth Circuit's holding in *United States v. Diaz*, 116 F.4th 458 (5th Cir. 2024). The Court finds that *Diaz* forecloses Matthews's argument.

In *Bruen*, the Supreme Court stated the test for the constitutionality of regulations of the right to bear arms under the Second Amendment. *Bruen* held that "[w]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct."[7] *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 24 (2022). The Supreme Court further held that when conduct is presumptively protected, the "government must then justify its regulation by demonstrating that it is

---

[7] The Second Amendment provides, "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II.

3

consistent with the Nation's historical tradition of firearm regulation." *Id.* To determine whether a historical regulation is a "proper analogue" for a modern firearm regulation, the Court must evaluate whether the two regulations are "relevantly similar." *Id.* at 29. The Court identified two metrics that are "central" to the inquiry of whether the new law is relevantly similar to laws "our tradition is understood to permit." *United States v. Rahimi*, 602 U.S. 680, 692 (2024). Those two metrics are "how and why the regulations burden a law-abiding citizen's right to armed self-defense." *Bruen*, 597 U.S. at 29. *Rahimi* made clear that the challenged regulation does not have to be a precise match of its "historical precursor" to be a sufficient analogue to satisfy constitutional requirements. *Rahimi*, 602 U.S. at 692.

In *Diaz, supra*, the Fifth Circuit applied these principles to uphold the constitutionality of Section 922(g)(1) as applied to a defendant who was previously convicted of theft of a vehicle. The Fifth Circuit first concluded that "the plain text of the Second Amendment covers the conduct prohibited by § 922(g)(1)," which proscribes firearm possession by a convicted felon.[8]

---

8     18 U.S.C. § 922(g)(1) states, "It shall be unlawful for any person who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition

4

*Id.* at 467. The burden then shifted to the government to demonstrate that Section 922(g)(1) as applied to defendant was "consistent with the Nation's historical tradition of firearm regulation." *Id.* (quoting *Bruen*, 597 U.S. at 24). The court found that, at the time of the Founding, those convicted of theft were subject to the death penalty and estate forfeiture. *Id.* at 468–69. When considering the historical regulations and Section 922(g)(1), the "why" consideration aligned in that both were justified by the need to "punish felons, deter reoffending, and protect society from those proven untrustworthy to follow the law." *Id.* at 469. "How" the laws achieved their goals likewise aligned because they both permanently punished offenders. The Fifth Circuit found permanent disarmament under Section 922(g)(1) did not punish such offenders to an extent greater than capital punishment and estate forfeiture that applied at the time of the Founding. The court thus concluded that because "at least one of the predicate crimes that Diaz's § 922(g)(1) conviction relie[d] on—theft—was a felony [at the time of the Founding] and thus would have led to capital punishment or estate forfeiture[, d]isarming Diaz fits within this tradition of serious and permanent punishment." *Id.* at 469–70.

---

which has been shipped or transported in interstate or foreign commerce."

The court buttressed this determination with a second method of analysis. The court referred to other historical records that revealed that the public understanding of the Second Amendment around the time of its ratification was that "the right to bear arms at the time was not unlimited, and that the government could prevent people who had committed crimes or were 'quarrelsome' from accessing weapons." *Id.* at 470. It also pointed to colonial-era laws that punished "going armed" offenses with permanent arms forfeiture. *Id.* at 470–471. The court concluded that, "'[t]aken together,' laws authorizing severe punishments for thievery and permanent disarmament in other cases establish that our tradition of firearm regulation supports the application of § 922(g)(1) to" defendant and "people like" defendant. *Id.* at 471, 471 n.7.

Here, one of the prior felonies supporting Matthews's felon in possession charge is simple robbery.[9] The analysis of whether this conviction can constitutionally provide the basis for a Section 922(g)(1) charge is analogous to that in *Diaz*, because robbery under Louisiana law is understood as theft using force or intimidation. *See State v. Florant*, 602 So.2d 338, 340 (La. App. 4 Cir. 1992) ("A study of the criminal statutes defining 'theft' and 'simple robbery' reveals that the critical difference

---

9     R. Doc. 1 at 2.

between the two crimes is the force or intimidation element."); *see also State v. Meyers*, 620 So. 2d 1160, 1162–63 (La. 1993) (concluding, at a high level, that robbery occurs where force or intimidation is used in the course of committing a theft); *see also State v. Johnson*, 411 So. 2d 439, 441 (La. 1982) ("It is the increased risk of danger to human life caused when a theft is attempted in the face of the victim's opposition that caused the legislature to differentiate between robbery and mere theft."). Further, the authorities that *Diaz* relied on to create historical analogues support the constitutionality of predicating disarmament on a Louisiana robbery conviction. One historical source recorded estate forfeiture for a man found guilty of "[feloniously] taking away corn[] & fish[] from d[i]vers[e] p[er]sons." 2 Records of the Court of Assistants of the Colony of the Massachusetts Bay 1630–1692, at 32 (John Noble ed., 1904). Similarly, Louisiana's simple robbery statute criminalizes "*taking of anything of value belonging to another* from the person of another or that is in the immediate control of another by use of force or intimidation." La. R.S. § 14:65 (emphasis added). Additionally, another historical law authorized the death penalty for "robbing any person or persons in his, her, or their dwelling house [with] the dweller in the same house . . . or of robbing any person in or about any highway." Act of Feb. 21, 1788, ch. 37, 1788 N.Y. Laws 664–65; *see also* Articles, Lawes, and Orders,

7

Diuine, Politique, and Martiall for the Colony in Virginea, in 3 Tracts and Other Papers Relating Principally to the Origin, Settlement, and Progress of the Colonies in North America from the Discovery of the Country to the Year 1776 48 (Peter Force ed., 1844) (punishing by death the robbing of a "fellow souldier, or neighbour, any thing that is his, victuals, apparell, household stuffe, toole, or what necessary else soeuer, by water or land, out of boate, house, or knapsack").

Moreover, robbery's additional element of taking "by use of force or intimidation" supports the application of Section 922(g)(1). *See* La. R.S. § 14:65. As stated in *Rahimi*, "[o]ur tradition of firearm regulation allows the Government to disarm individuals who present a credible threat to the physical safety of others." *Rahimi*, 144 S. Ct. at 1902; *see Diaz*, 116 F.4th at 470; *cf. id.* 471 n.5 (noting that the crime in *Diaz* did not involve a threat of violence so that *Rahimi*'s statement did not apply). Therefore, the government may restrict firearm access to those convicted of robbery because inherent in a robbery conviction is posing a threat to the physical safety of others. In summary, robbery can be punished with disarmament following the same reasoning that *Diaz* used to hold that theft can be punished with disarmament.

Therefore, the Court holds that the Second Amendment does not preclude the enforcement of Section 922(g)(1) against Matthews. *See United States v. Polk*, No. 23-00166, 2024 WL 4216039, at *5 (S.D. Ind. Sept. 17, 2024) (upholding Section 922(g)(1)'s application to a criminal defendant who was formerly convicted of robbery and battery); *see also United States v. Waulk*, No. 20-31, 2024 WL 3937489, at *7 (W.D. Pa. Aug. 26, 2024) (finding Section 922(g)(1) applies to the defendant and is consistent with the Nation's historical tradition of firearm regulation where defendant was convicted of robbery and aggravated assault).

### B. Vagueness

Defendant next argues that Section 922(g)(1) is unconstitutionally vague in violation of the Fifth Amendment's Due Process Clause because it fails to provide fair notice of the conduct it prohibits. Defendant attempts to demonstrate that the Supreme Court's interpretation of Second Amendment rights makes it unclear which subset of individuals previously convicted of crimes punishable by more than a year of imprisonment have a right to possess firearms, leading to an unconstitutionally vague, piecemeal approach to Section 922(g)(1).[10] His arguments fail.

---

[10] R. Doc. 31-1 at 10.

There is a "strong presumptive validity that attaches to an Act of Congress." *Skilling v. United States*, 561 U.S. 358, 403 (2010) (quoting *United States v. Nat'l Dairy Prods. Corp.*, 372 U.S. 29, 32 (1963). The Supreme Court has made clear that "statutes are not automatically invalidated as vague simply because difficulty is found in determining whether certain marginal offenses fall within their language." *Nat'l Dairy Prods. Corp.*, 372 U.S. at 32. A criminal law is void for vagueness under the Fifth Amendment when it is "so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595 (2015). "[V]agueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand." *United States v. Mazurie*, 419 U.S. 544, 550 (1975); *see United States v. Clark*, 582 F.3d 607, 614 (5th Cir. 2009) ("As a threshold matter, [defendant] must show that the statute is vague *in his case*." (emphasis in original)). "A plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others." *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 495 (1982).

There is no authority holding Section 922(g)(1) void for vagueness in the context of a predicate robbery conviction. Defendant's argument is essentially that the Supreme Court's and lower court precedents have created "contradiction[s] and confusion" among courts as to the constitutionality of Section 922(g)(1).[11] Defendant fails to demonstrate that Section 922(g)(1) is vague with regard to his conduct. Section 922(g)(1) makes it "unlawful for any person who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year" to possess a firearm. First, defendant's conduct clearly falls under Section 922(g)(1): He was previously convicted of a crime punishable by imprisonment of a term exceeding one year, and he allegedly possessed a firearm. Given the terms of the statute and the facts at hand, an ordinary person would have sufficient notice that Matthews's alleged conduct comes within the terms of the statute.

Second, the Supreme Court's Second Amendment jurisprudence creates no uncertainty as to the applicability of Section 922(g)(1) in this case. The Supreme Court made it clear that "[o]ur tradition of firearm regulation allows the Government to disarm individuals who present a credible threat to the physical safety of others." *United States v. Rahimi*, 602 U.S. 680, 700 (2024). The Court noted that the United States's tradition of surety and

---

[11]   R. Doc. 31-1 at 9.

going armed laws confirm that "[w]hen an individual poses a clear threat of physical violence to another, the threatening individual may be disarmed." *Id.* at 698. Matthews was convicted of three counts of simple robbery, which involved using force or intimidation to take another's property. La. R.S. § 14:65. A person of ordinary intelligence, having been convicted of three counts of this offense, would know that using force or intimidation to deprive a victim of his property constitutes a "clear threat of physical violence to another" and puts him squarely in the crosshairs of Section 922(g)(1) if he thereafter possesses a firearm. If the Court were to consider the facts underlying these convictions, in which Matthews on three occasions pointed a firearm at the victims and demanded their possessions,[12] then the applicability of Section 922(g)(1) is made even more apparent. Given our historical tradition and the Supreme Court's acknowledgment in *Rahimi*, an ordinary person would have fair notice that, in the light of the facts here, his conduct violated Section 922(g)(1).

For the foregoing reasons, Section 922(g)(1) is not unconstitutionally vague.

---

[12] R. Doc. 23-1 at 3; R. Doc. 23-2 at 3; R. Doc. 23-3 at 2.

### C. Commerce Clause

Defendant argues that Section 922(g)(1) exceeds Congress's authority under the Commerce Clause. Defendant's Commerce Clause argument is foreclosed by the Fifth Circuit's precedent. *See United States v. Diaz*, 116 F.4th 458, 462 (5th Cir. 2024); *see also United States v. Alcantar*, 733 F.3d 143, 145 (5th Cir. 2013) ("[W]e have consistently upheld the constitutionality of § 922(g)(1)."). Indeed, defendant himself notes that this "argument is presently foreclosed and raised solely to preserve it for further review."[13] This Court is bound to follow Fifth Circuit precedent. Thus, the Commerce Clause argument fails.

### IV. CONCLUSION

For the foregoing reasons, the Court DENIES defendant's motion to dismiss count three of the indictment.

New Orleans, Louisiana, this __15th__ day of January, 2025.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE

---

[13] *Id.* at 10 n.3.